**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **PHALLON TILLIS** | **CASE NO. 3:24-CV-00544** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JONATHAN ROGERS ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

# MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 116] filed by Defendants, Glenn C. Alvarez ("Alvarez") and Canal Insurance Company ("Canal") (collectively, "Movants"). Defendants, Jonathan Rogers ("Rogers") and State Farm Mutual Automobile Insurance Company ("State Farm"), filed an opposition [Doc. No. 127]. Plaintiffs, Phallon Tillis and Jhillian Tillis (collectively, "Plaintiffs"), also filed an opposition [Doc. No. 131]. Alvarez and Canal filed a reply to Rogers and State Farm's opposition [Doc No. 133]. Finally, Alvarez and Canal filed a reply to Plaintiffs' opposition [Doc. No. 132].

For the reasons set forth, Movants' Motion is **GRANTED**.

## I. BACKGROUND

This lawsuit arises from a fatal car crash that occurred on March 25, 2023, on Interstate 20 in Ouachita Parish, Louisiana.[1] Three individuals are involved in this incident: Linda Tillis, Rogers, and Alvarez.[2] Canal is Alvarez's insurer, and State Farm is Rogers' insurer.[3]

---

[1] [Doc. No. 1-2].
[2] [Id. at p. 2].
[3] [Id.]; [Doc. No. 30].

Before the crash, Gregory Jackson's ("Jackson") vehicle was on fire on I-20 Eastbound.[4] Alvarez, while traveling Westbound on I-20, observed said fire.[5] Alvarez testified that he saw people signaling for help.[6] He maneuvered his tractor-trailer unit onto the shoulder near mile marker 108, approaching the Camp Road Exit.[7] After parking his vehicle, Alvarez, according to his testimony, activated his emergency lights, changed into his sneakers, and exited his vehicle.[8] He then placed two triangles approximately twenty feet behind his trailer.[9] Alvarez then proceeded to retrieve a fire extinguisher from the trailer of his vehicle.[10] He then crossed the highway to the Eastbound Lane and handed the fire extinguisher to a man.[11]

While assisting with the vehicle fire on the Eastbound Lane, Tillis, for reasons unknown, parked behind Alvarez's tractor-trailer.[12] Rogers, who drove a GMC pickup truck also heading Westbound on I-20, slammed into the back of Tillis' vehicle, and Tillis died as a result of the collision after her vehicle caught fire and she could not be extracted in time.[13]

Plaintiffs filed this suit alleging that Alvarez's actions caused or contributed to Tillis' death.[14] Plaintiffs have subsequently named Alvarez's insurance company,

[4] [Doc. No. 116-1, p. 1].
[5] [Id.].
[6] [Doc. No. 122-3, p. 40].
[7] [Doc. No. 116, p. 2].
[8] [Id.]; [Doc. No. 122-3, p. 46].
[9] [Id. at pp. 46–47].
[10] [Id. at p. 48].
[11] [Id. at p. 49].
[12] [Doc. No. 116, p. 2]. Plaintiffs' Complaint states that Tillis "brought her vehicle to a stop due to the roadway being obstructed." [Doc. No. 1-2, p. 3, ¶ 9]. However, this is speculative considering Tillis is deceased and could not give any facts surrounding this incident.
[13] [Id. at pp. 2–3]; [Doc. No. 131, p. 6].
[14] [Doc. No. 1-2, p. 4, ¶ 14].

Canal, as a Defendant in their First Amended Complaint.[15] Alvarez and Canal move for summary judgment, arguing all claims against them should be dismissed with prejudice.[16] Specifically, they contend that Alvarez did not cause or contribute to the accident and that statutory immunity protects him because he acted in good faith without gross negligence or willful misconduct.[17]

In opposing summary judgment, Rogers and State Farm detail five arguments: (1) Alvarez is not entitled to Good Samaritan immunity; (2) Canal cannot enjoy the Good Samaritan Statute immunity; (3) Alvarez illegally created a hazardous roadside obstruction by parking on the shoulder; (4) Alvarez failed to comply with statutory warning triangle distance requirements and hazard lighting rules; and (5) Alvarez acted negligently and criminally by crossing the interstate on foot.[18]

Plaintiffs also oppose summary judgment, detailing four arguments: (1) by parking illegally on the shoulder, Alvarez created the exact type of danger that caused Tillis' death; (2) Alvarez was not rendering emergency aid and the evidence does not support he perceived any type of emergency; (3) Alvarez created a hazard by running across a busy interstate, which is why Rogers says he was changing lanes before the crash; and (4) Alvarez moved his vehicle after the crash, and, therefore, he cannot proves he was parked completely on the shoulder of the interstate.[19]

The matter is fully briefed, and ripe for ruling.

---

15 [Doc. No. 30].
16 [Doc. No. 116]; [Doc. No. 118].
17 [Id.].
18 [Doc. No. 127].
19 [Doc. No. 131, pp. 6–7].

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Courts must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *In re Genesis Marine, LLC*, 164 F.4th 448, 453 (5th Cir. 2026) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And a dispute about a material fact "is 'genuine' if the evidence is sufficient for a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). Put differently, courts must grant summary judgment against a party who does not—or cannot—show "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The movant must first point to "particular parts of materials in the record," such as depositions, documents, electronic information, affidavits, interrogatories, etc., to show there is no genuine dispute of material fact. FED. R. CIV. P. 56(c)(1)(A). Once the movant does so, the burden shifts to the nonmovant who "must go beyond his pleadings and designate specific facts showing that there is a genuine dispute of material fact for trial." *Clark v. Dep't of Pub. Safety & Corr.*, 141 F.4th 653, 659 (5th Cir. 2025) (citing *Celotex*, 477 U.S. at 324)). The nonmovant cannot "defeat summary judgment with" metaphysical doubts as to the facts, "'conclusory allegations,'

'unsubstantiated assertions,' or 'only a scintilla of evidence.'" *In re Genesis Marine*, 164 F.4th at 453 (collecting cases).

Finally—and most importantly—when resolving summary judgment motions, "courts may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes" and must resolve all ambiguities and draw all permissible inferences "in favor of the non-moving party." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (citation modified) (citing *Anderson*, 477 U.S. at 255).

### B. Good Samaritan Immunity

Any person who in good faith gratuitously renders emergency assistance at the scene of an emergency shall not be liable for civil damages resulting from any act or omission, absent gross negligence or willful misconduct. La. Rev. Stat. § 9:2793. Gross negligence is defined as the want of even slight care—conduct demonstrating an entire absence of care or utter disregard for safety. *Ware v. Irving Place Assocs., LP*, 22-5332, 2024 WL 4043841, at *2 (W.D. La. Sept. 3, 2024).

Rogers and State Farm contend that Alvarez was not acting as a Good Samaritan because he did not see anyone in danger; and after parking his truck, it took him at least twenty minutes to arrive at the car fire and by then, a crowd had already gathered.[20] Plaintiffs seem to make the same argument but go further and assert that a finding that Alvarez is entitled to immunity under the Good Samaritan statute will require at least three factual determinations.[21] The three factual

[20] [Doc. No. 127, p. 7].
[21] [Doc. No. 131, p. 17].

determinations being: (1) did Alvarez perceive an emergency; (2) was Alvarez acting in good faith; and (3) was his action of parking on the shoulder grossly negligent.[22]

Alvarez and Canal refute Rogers' arguments. Specifically, they contend that an emergency existed because an active vehicle fire remained an ongoing hazard regardless of whether the occupants exited the vehicle and the statute does not require instantaneous or successful assistance.[23] Alvarez goes further and argues that even considering the evidence cited by Rogers, it is clear that Alvarez was attempting to render aid during an emergency.[24] Alvarez clarifies that even if he did not respond correctly, such allegations would establish at most ordinary negligence, and Good Samaritan immunity is defeated only by gross negligence or willful misconduct, which Rogers identifies no evidence approaching the "want of even slight care and diligence" required to satisfy that standard.[25]

Plaintiffs make similar arguments. Alvarez asserts that all evidence proves an active vehicle fire existed before the collision occurred.[26] Specifically, he points out that Plaintiffs focus primarily on his response to the vehicle fire.[27] Alvarez argues that Plaintiffs' assertions are irrelevant and that the Good Samaritan statute "does not require instantaneous action, perfect judgment, or successful rescue efforts."[28] Additionally, he argues that regardless of whether he legally parked on the shoulder,

---

22 [Id].
23 [Doc. No. 133, pp. 3–4].
24 [Id. at p. 4].
25 [Id. at pp. 4–5].
26 [Doc. No. 132, p. 2].
27 [Id. at p. 3].
28 [Id.].

Plaintiffs have failed to provide sufficient evidence of gross negligence or willful misconduct.[29]

The Court agrees with the Movants. The record establishes that Alvarez observed an active, hazardous vehicle fire across the highway, safely maneuvered his commercial vehicle completely onto the shoulder outside active traffic lanes, retrieved a fire extinguisher, and crossed the interstate to assist. These actions were purely altruistic and undertaken in direct response to an exigent emergency. Plaintiffs and Rogers have failed to produce any evidence demonstrating that Alvarez acted with gross negligence or willful misconduct. Instead, their arguments rely on speculative assertions regarding his timing and judgment that are legally insufficient to meet the demanding "want of even slight care" standard under *Ware*.

Accordingly, Alvarez is statutorily immune from civil liability under the Good Samaritan statute. Because Alvarez bears no underlying liability as a matter of law, no derivative liability can attach to his liability insurer, Canal. *See Seibel v. Holmes*, 371 So. 3d 1082, 1087 (La. App. 2023).

**C. Negligence**

Even assuming *arguendo* that Good Samaritan immunity did not apply, Plaintiffs' and Rogers' assertions fail under general Louisiana negligence principles. To establish an action for negligence under Louisiana law, Plaintiffs must prove five elements by a preponderance of the evidence: 1) the defendant had a duty to conform conduct to a specific standard; 2) the defendant's conduct failed to conform to that

[29] [Id. at p. 4].

standard; 3) the defendant's conduct was a cause-in-fact of the injury; 4) the defendant's conduct was a legal cause of the injury; and 5) proof of damages. La. Civ. Code Ann. art. 2315 (2026). As Plaintiffs must prove all five elements, the failure to prove any one element legally entitles Alvarez to summary judgment. Here, Plaintiffs and Rogers contest that the car crash was a cause-in-fact of Tillis' injuries and ultimate death.[30]

Whether a claim sounds in negligence or premises liability, courts employ the duty-risk analysis; "the result under either should be the same." *Farrell v. Circle K Stores, Inc.*, 359 So. 3d 467, 473 (La. 2023); *see also*, *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 632–33 (La. 2006) ("The duty-risk analysis is the standard negligence analysis to be employed in determining whether liability is imposed under" Article 2315.). Although there is no requirement that these elements be evaluated in any particular order, the threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. *Campbell v. Orient-Express Hotels Louisiana, Inc.*, 403 So. 3d 573, 581 (La. 2025). This is the logical starting point, as absent a recognized duty, a defendant cannot be held liable, and there is no need to inquire further. *Posecai v. Wal-Mart Stores, Inc.*, 752 So. 2d 762, 769 (La. 2002) (Where the court "found that no duty was owed, [it did] not reach the other elements of the duty-risk analysis that must be proven in establishing a negligence claim."). Whether a duty is owed is a question of law. *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 816 So.2d 270, 276 (La.,2002).

---

[30] [Doc. No. 131, p. 14]; [Doc. No. 127, p. 2].

Whether a particular risk falls within the scope of that duty, by contrast, "is fact sensitive and ultimately turns on a question of policy as to whether the particular risk falls within the scope of the duty." *Campbell*, 403 So. 3d at 581. However, the "determination of legal cause/scope of the duty involves a purely legal question." *Id.*

With these general principles in mind, the Court turns to the specific elements of the duty-risk analysis as they relate to the allegations of negligence at issue in this case.

**1. Duty of Alvarez**

Rogers and State Farm contend that Alvarez breached his duty of care by parking his vehicle on the shoulder, which created an unreasonable risk of harm and hazardous roadside obstruction.[31] Regarding the extent of his alleged negligence, Rogers points out that "cause-in-fact is a 'but for' inquiry, which tests whether the accident would or would not have happened but for the defendant's substandard conduct."[32] They go further and state the following material facts are disputed: (1) whether Alvarez had turned on his flashers; and (2) whether Alvarez placed triangles and, if so, how far behind his vehicle.[33] Plaintiffs assert that Alvarez parking on the shoulder and running across the interstate caused or contributed to Tillis' death and pre-death pain and suffering.[34]

Rogers' and Plaintiffs' duty arguments fail because any duty Alvarez had to not park on the shoulder, turn on hazard flashers, place warning triangles, or not run

[31] [Doc. No. 127, p. 8].
[32] [Id.].
[33] [Id. at p. 9].
[34] [Doc. No. 131, p. 14].

across the road, did not encompass protecting against independent, third-party conduct. Even if Alvarez did not activate his flashers, placed only two warning triangles as testified in his deposition,[35] or placed them twenty feet behind his trailer[36] rather than the distance Plaintiffs assert was required,[37] the legal duty to place triangles does neither extend to preventing Tillis from voluntarily parking on the shoulder, nor to guarding against Rogers' distracted driving when he ran off the road and hit Tillis. Parking on an interstate shoulder under emergency conditions does not constitute a breach of duty or create an unreasonable risk of harm where the vehicle remains entirely outside the traveled lane.

Rogers and Plaintiffs focus primarily on Alvarez's illegal parking.[38] Plaintiffs additionally question why Alvarez moved his vehicle after the crash.[39] The evidence, however, reveals this argument to be futile.

Investigating Louisiana State Trooper, James Olmstead ("Olmstead"), confirmed in his deposition that Alvarez's tractor-trailer was parked completely on the shoulder, was unoccupied, and did not straddle or obstruct any travel lane.[40] Olmstead clarifies that although under non-emergency circumstances Alvarez technically parked illegally, his parking did not contribute to the accident and Alvarez was not cited.[41] Olmstead was asked: "Do you have the power to ticket the operator of a commercial vehicle if they do not have those proper traffic controls out

[35] [Doc. No. 116-9, p. 5–7].
[36] [Id. at p. 10].
[37] [Doc. No. 127, p. 9].
[38] [Id.]; [Doc. No. 131, p. 15].
[39] [Id. at p. 11].
[40] [Doc. No. 122-2, pp. 42–49].
[41] [Id. at p. 77].

when they are parked on the shoulder of an interstate?"[42] Olmstead responded: "Not in the same way that the test units would. Not in the federal citations that they would give them. Ours would all be at 32 and 47."[43] "So you are not aware of any particular citation you could give them; is that what you are saying?"[44] Olmstead then clarifies, "Yes, sir. I don't think my forms or the paperwork I have has any of that in it."[45] He was also asked if there was any evidence that at the point of impact, Alvarez's vehicle was in any way on any of the lanes westbound on Interstate 20, and Olmstead said, "There was no evidence for that."[46]

Trooper Kevin Bazar Knight ("Knight") claims he was the first one on the scene.[47] Upon arriving, he spoke to Alvarez, who stated that "he stopped on the shoulder because there was a vehicle on fire on the other side of the interstate and he went over there to assist with that. And when he come back, that crash was happening or just happened or something of that manner."[48] Knight testified in his deposition that Alvarez was completely parked on the shoulder of the highway in the direction of travel.[49] When asked about Alvarez's parking, Knight stated: "If he was parked completely on the shoulder, that would not, in my opinion, have been hazardous because he was providing some assistance to people."[50]

---

[42] [Id. at p. 130].
[43] [Id.].
[44] [Id.].
[45] [Id.].
[46] [Id. at p. 44].
[47] [Doc. No. 122-1, p. 7].
[48] [Id. at p. 8].
[49] [Id. at p. 26].
[50] [Id. at p. 31].

Rogers and Plaintiffs, despite the testimony from Olmstead and Knight, continue to argue Alvarez's parking and failure to properly deploy warning devices allowed Tillis to park directly behind him, leading to her vehicle striking the rear of his vehicle upon impact from Roger's vehicle.[51] The evidence disagrees, and so does the Court. While Plaintiffs attempt to frame these minor discrepancies as material issues of fact, under Louisiana law, a statutory violation does not create liability unless the conduct was a cause-in-fact and proximate cause of the accident. La. C.C. art. 2315. Under *Perkins v. Entergy Corp.*, conduct that merely sets a passive background condition, making an injury possible, is not a legal cause-in-fact. 782 So. 2d 606, 611 (La. 2001).

Further, Olmstead testified that physical evidence confirmed that Alvarez's vehicle was not the point of initial impact. The initial impact occurred solely when Rogers slammed into Tillis' stationary F-150.[52] Olmstead specifically testified that he identified no act or omission by Alvarez that contributed to the crash sequence.[53] Knight corroborated that Alvarez was stopped on the shoulder and merely assisting at the fire scene when the crash occurred.

Turning to Alvarez moving his vehicle after the crash, this has no bearing on Alvarez's potential liability in this case. Whether he moved his vehicle as a result of an officer requesting it or to get away from the fire, the evidence and the deposition

---

[51] [Doc. No. 127, pp. 9–10]; [Doc. No. 131, p. 15].
[52] [Doc. No. 122-2, p. 63].
[53] [Id. at p. 108].

testimony from Olmstead, Knight, and Rogers himself reveal that Alvarez's vehicle was not obstructing the travel lane and Alvarez did not cause this crash to occur.

As for the argument of Alvarez running across the interstate, Rogers also admitted in his deposition that he was distracted by the fire on the other side of the highway.[54] He stated:

> I remember moving into the right lane to avoid a guy that was coming across the street that's coming out where the diesel is. He was walking across the lanes. And if I kept going, I could have hit him. So, I moved to the right so he could keep on because seems that he was going across the interstate to go help with the fire, I guess.[55]

He further clarifies that he was "shifting lanes out of respect. It's not that he's so close to me that I would hit him, but he's far up ahead that just out of pure respect just don't get close to him."[56] Rogers was distracted by the fire, failed to keep a proper lookout, drifted onto the shoulder at 65 mph, and did not brake until 2.5 seconds before crashing into Tillis.[57]

Again, whether Alvarez followed certain regulations—such as parking on the shoulder (which the Court determined was for emergency reasons), running across the road, no flashers, or placing triangles at a specific distance—would not constitute a breach of duty in this case. Even if a commercial driver such as Alvarez owed a duty to deploy hazard triangles at specific distances and turn their flashers on, the scope of that duty does not encompass protecting a trailing motorist from being rear-ended

---

[54] [Doc. No. 122-6, p. 52].
[55] [Id. at p. 47].
[56] [Id. at p. 53].
[57] [Doc. No. 122-2, p. 74].

on the shoulder by an impaired or distracted third-party driver. The failure of a driver to maintain a proper lookout is an intervening cause that breaks any alleged chain connecting Alvarez's parked trailer to the impact. It was not foreseeable that Rogers would be distracted by the vehicle fire and crash into Tillis' vehicle after Alvarez and she parked on the shoulder of the interstate. *Mendoza v. Mashburn*, 747 So.2d 1159, at *1168 (La.App. 5 Cir., 1999).

**2. Cause-in-Fact**

Even assuming *arguendo* that Alvarez breached a legal duty regarding his hazard lights or warning triangle placement, Plaintiffs' negligence claims still fails because Alvarez's conduct was not a cause-in-fact of the collision.

Under Louisiana law, cause-in-fact is determined by applying either the "but-for" test or the "substantial factor" test. *Perkins*, 782 So. 2d at 611. Under the "but-for" test, the Court considers whether the injury would have occurred without the defendant's substandard conduct. *Id.* Under the "substantial factor" test, used when multiple causes are alleged, the inquiry is whether the defendant's conduct was a substantial factor in bringing about the harm. *Id.* Crucially, conduct that merely creates a passive condition that exposes a plaintiff to harm caused by an independent third party does not satisfy cause-in-fact. *See id.*

Here, neither Plaintiffs nor Rogers can satisfy either test. First, applying the "but-for" test, Plaintiffs offer no competent evidence showing that if Alvarez had placed warning triangles further back or activated his hazard flashers, Rogers—who admitted to being distracted by the active vehicle fire across the interstate—would have avoided drifting onto the shoulder. Second, under the "substantial factor" test,

Alvarez's parked tractor-trailer was nothing more than a passive condition. The sole cause-in-fact of this tragic accident was Rogers driving sixty-five miles per hour while distracted, failing to keep a proper lookout, drifting off the traveled lane, and slamming into Tillis' stationary vehicle. Alvarez's actions did not cause Tillis to park on the shoulder, nor did they cause Rogers to run off the road. Because Plaintiffs cannot establish cause-in-fact, summary judgment is independently required on this element.

After reviewing all summary judgment evidence and addressing every argument raised by Plaintiffs, the Court finds no genuine issue of material fact. Alvarez is statutorily immune under the Good Samaritan Statute, breached no legal duty, and his parked tractor-trailer or running across the road was not a cause-in-fact of the collision. And Rogers' failure to keep a proper lookout was the sole cause-in-fact and proximate cause of the accident. Movants are, therefore, entitled to judgment as a matter of law.

## III. CONCLUSION

For the reasons stated above,

**IT IS ORDERED, ADJUDGED, AND DECREED** that the Motion for Summary Judgment [Doc. No. 116] filed by Defendants Glenn C. Alvarez and Canal Insurance Company is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims asserted against Defendants Glenn C. Alvarez and Canal Insurance Company in this action are **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 7th day of August 2026.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE