**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **PHALLON TILLIS** | **CASE NO. 3:24-CV-00544** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JONATHAN ROGERS ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment [Doc. No. 140] filed by Defendants, Miriam G. Rogers, individually ("Mrs. Rogers"), and Miriam Rogers D/B/A Miriam's Furniture ("Miriam's Furniture") (collectively, "Movants"). Plaintiffs Phallon Tillis and Jhillian Tillis (collectively, "Plaintiffs") filed an opposition [Doc. No. 147] and a supplemental memorandum [Doc. No. 149]. Movants filed a reply [Doc. No. 156].[1]

For the following reasons, the Motion is **GRANTED**.

## I. Background

This lawsuit arises from a fatal car crash that occurred on March 25, 2023, on Interstate 20 in Ouachita Parish, Louisiana.[2] Plaintiffs' mother, Linda Tillis ("Tillis"), was the fatality; and due to the incident, they filed this suit.[3] The crash involved three individuals: Tillis, Glenn C. Alvarez ("Alvarez"), and Jonathan Rogers ("Rogers").[4]

[1] Former Defendants, Glenn C. Alvarez and Canal Insurance Company, also filed an opposition to the Motion [Doc. No. 148]; however, the Court has since dismissed these parties, *see* [Doc. Nos. 153–154], so their opposition is moot and the Court will not consider it.
[2] [Doc. No. 1-2].
[3] [Doc. No. 140-1, p. 6].
[4] [Id.].

Plaintiffs have sued and assert claims against the Movants under the doctrine of *respondeat superior*.[5] Specifically, Plaintiffs allege that Rogers was acting within the course and scope of his employment with Movants because he was delivering a piece of furniture for Movants at the time of the accident.[6] Due to this allegation, Plaintiffs also assert that Movants are directly and vicariously liable for Rogers' alleged negligence.[7] Alternatively, Plaintiffs allege that at the time of the accident, a contract or agreement existed between Rogers and Movants for the use of Rogers' owned vehicle, and under the agreement, Movants assumed liability for Rogers' actions.[8] Finally, Plaintiffs allege that Movants would have had liability for Rogers' actions in the absence of any contract or agreement.[9]

The Court earlier denied a similar summary judgment motion, believing that previously unproduced State Farm Policies were "relevant to deciding" to deciding that motion.[10] The Court ordered, pursuant to Federal Rule of Civil Procedure 56(d), that Movants could reassert their motion for summary judgment after discovery had been completed.[11] On December 9, 2025, Movants provided Plaintiffs with the requested additional State Farm Policies.[12] On December 19, 2025, Plaintiffs sent a subpoena directly to State Farm seeking the same policy information.[13] Discovery continued, and Plaintiffs then propounded a third set of interrogatories, requesting

---

[5] [Id.]; [Doc. No. 30].
[6] [Doc. No. 140-1, p. 7].
[7] [Id.].
[8] [Id.].
[9] [Id.].
[10] [Doc. No. 101, p. 3].
[11] [Id.].
[12] [Doc. No. 140-4, 140-5].
[13] [Doc. No. 140-1, p. 9]; [Doc. Nos. 103, 104, 105].

information for all employees and contractors paid by Miriam's Furniture between January 1, 2022, through March 31, 2023.[14] This information had already been provided with Movants' prior motion for summary judgment.[15]

The Movants now reassert their prior motion for summary judgment, arguing that there is no genuine issue of material fact upon which a reasonable jury could determine that the Movants are vicariously or directly liable for Rogers' alleged negligence.[16]

The parties briefed all relevant issues, and the matter is ripe.

## II. Law and Analysis

### A. Summary Judgment Standard

Courts must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *In re Genesis Marine, LLC*, 164 F.4th 448, 453 (5th Cir. 2026) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And a dispute about a material fact "is 'genuine' if the evidence is sufficient for a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). Put differently, courts must grant summary judgment against a party who does not—or cannot—show "the existence of an element essential to that party's case, and on which that party will bear the burden

[14] [Doc. No. 140-6].
[15] [Doc. No. 140-1, p. 9].
[16] [Id. at p. 29].

of proof at trial." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The movant must first point to "particular parts of materials in the record," such as depositions, documents, electronic information, affidavits, interrogatories, etc., to show there is no genuine dispute of material fact. FED. R. CIV. P. 56(c)(1)(A). Once the movant does so, the burden shifts to the nonmovant who "must go beyond his pleadings and designate specific facts showing that there is a genuine dispute of material fact for trial." *Clark v. Dep't of Pub. Safety & Corr.*, 141 F.4th 653, 659 (5th Cir. 2025) (citing *Celotex*, 477 U.S. at 324)). The nonmovant cannot "defeat summary judgment with" metaphysical doubts as to the facts, "'conclusory allegations,' 'unsubstantiated assertions,' or 'only a scintilla of evidence.'" *In re Genesis Marine*, 164 F.4th at 453 (collecting cases).

Finally—and most importantly—when resolving summary judgment motions, "courts may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes" and must resolve all ambiguities and draw all permissible inferences "in favor of the non-moving party." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (citation modified) (citing *Anderson*, 477 U.S. at 255).

### B. Vicarious Liability

A federal court sitting in diversity jurisdiction employs the substantive law of the forum state. *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003). Thus, the Court will apply Louisiana law regarding vicarious liability of employers. The law pertinent to vicarious liability matters is governed by Louisiana Civil Code article 2320, which is also known as the doctrine of respondeat superior. *Ledet v.*

*Robinson Helicopter Co.*, 195 So. 3d 89, 92 (La. App. 2016). "Louisiana Civil Code article 2320 provides that employers are answerable for the damage occasioned by their employees in the exercise of the functions in which they are employed." *Id.* (citing *Henly v. Phillips Abita Lumber Co.*, 971 So. 2d 1104, 1112–13 (La. App. 2016)); *see also Richard v. Hall*, 874 So. 2d 131, 137–38 (La. 2004). Two elements must exist to satisfy Article 2320: "(1) the existence of an employer-employee relationship and (2) the tortious act of the employee was committed during the course and scope of the employment by the employer sought to be held liable." *Lagrange v. Boone*, 337 So. 3d 921, 925 (La. App. 2022) (quoting *Maze v. Grogan*, 694 So. 2d 1168, 1170 (La. App. 1997)).

"[S]ummary judgment on a vicarious-liability claim is appropriate when the uncontested facts show that an alleged tortfeasor *was not* an employee of the defendant." *Id.* at 926 (emphasis added) (citing *Morales v. Davis Bros. Constr. Co.*, 647 So. 2d 1302 (La. App. 1994)).

Thus, the "single most important factor to consider in deciding whether the employer-employee relationship exists, for purposes of [article] 2320, is the right of the employer to control the work of the employee." *Bolden v. Tisdale*, 347 So. 3d 697, 708 (La. 2022) (internal citation omitted). To determine an employer's control, the Louisiana Supreme Court generally looks to the "(1) selection and engagement; (2) payment of wages; (3) power of dismissal; and (4) power of control." *Id.* (citing *Hillman v. Comm-Care, Inc.*, 805 So. 2d 1157, 1162 (La. 2002)). No one factor controls, as "the totality of the circumstances must be considered, and the burden of proof is

on the party seeking to establish an employer-employee relationship." *Id. (*quoting *Melerine v. Williams,* 2024 WL 4371048 (W.D.La., 2024).

Movants filed this Motion, arguing that they cannot be held vicariously liable based on Rogers' alleged negligence since there is no employer-employee relationship between Movants and Rogers.[17] Plaintiffs focus primarily on Rogers' June 7, 2024, interrogatory response, signed by his counsel, which stated he was a co-owner of Miriam's Furniture and was "delivering a box spring to another business location" at the time of the crash.[18] Movants clarify with business records, insurance policies, and testimony that Rogers is not and has never been an employee of Miriam's Furniture.[19] Instead, at the time of the accident, Rogers was employed by Legacy EMS, Inc., which means Plaintiffs have failed to meet the first *Hillman* factor of selection and engagement.[20] It has also been clarified that Rogers is not a co-owner of Miriam's Furniture, as evidenced by the postnuptial agreement.[21]

As for payment of wages, Movants' payroll records and 1099 contractor payment reports from January 2022 through June 2023 confirm that Rogers never received wages, commissions, W-9s, or 1099s from Movants.[22] As to the power of dismissal factor, because no employment contract or relationship ever existed, Movants possessed no right to discipline or terminate Rogers.

---

17 [Doc. No. 140-1, p. 19].

18 [Doc. No. 147, p. 5]; [Doc. No. 147-1, p. 3].

19 [Doc. No. 140-1, p. 19]; [Doc. No. 84-2, at ¶ 6]; [Doc. No. 84-6, pp. 4–5]; [Doc. No. 140-2]; [Doc. No. 140-6].

20 [Doc. No. 84-6, pp. 6–7].

21 [Doc. No. 84-3]; [Doc. No. 140-1, p. 10]; [Doc. No. 147, p. 9].

22 [Doc. No. 84-4]; [Doc. No. 84-5]; [Doc. No. 140-1, p. 7].

The element of control is the most important factor. *Bolden v. Tisdale*, 347 So. 3d 697, 708 (La. 2022). At the time of the collision, Rogers drove his personal GMC pickup truck on a personal errand to transport a discarded display box spring for his daughter's bedroom.[23] This appears to be the only factor Plaintiffs seem to rely on. Plaintiffs contend that Miriam's role as sole-proprietor, her direction for another person to retrieve store inventory from a specific store location, and asking Rogers to bring it to a specific location is the direction of a business owner to a person acting on behalf of her business.[24] Movants, however, argue that the request to Rogers was simply a "spousal request to run a personal errand that just happens to involve one stop being a store location."[25] The Court agrees with the Movants. Movants did not direct his route, control his physical activities, dictate his schedule, or pay him for the errand.

Here, the transportation of the box spring was a purely personal, familial endeavor serving no economic benefit or business goal for Miriam's Furniture. Miriam's Furniture conducts store deliveries exclusively using its dedicated commercial Isuzu box trucks, not employees' personal vehicles.[26] Transporting a discarded item home for a family member is a purely personal mission extraneous to the store's operations.

Plaintiffs rely on initial pre-litigation statements made by Rogers to a family member of the deceased and unverified discovery answers suggesting he was making

---

[23] [Doc. No. 140-1, p. 25].
[24] [Doc. No. 147, p. 8].
[25] [Doc. No. 156, p. 4].
[26] [Doc. No. 84-7, p. 8]; [Doc. No. 84-8, p. 4].

a delivery to another business.[27] However, unverified discovery responses are not competent summary judgment evidence. *Latiolais v. Terrebonne Parish Consolidated Government*, 405 So.3d 1054, 1060 (La.App. 2024). Furthermore, Rogers clarified in his sworn deposition that those unverified comments stemmed from personal sympathy and a well-meaning but legally mistaken belief that his wife's business policy might provide financial relief to the family.[28] His sworn testimony, corroborated by Mrs. Rogers and financial records, demonstrates that no legal master-servant relationship existed.

Even assuming *arguendo* that an employment relationship existed, vicarious liability fails because Rogers was not acting within the course and scope of employment. An act is within the course and scope of employment only if it is activated at least in part by a purpose to serve the employer. Here, Rogers picking up this discarded box spring for his wife and bringing it home for their daughter's use served no purpose of the employer but his wife.

Plaintiffs' reliance on *Timmons v. Silman*, is misplaced. 761 So. 2d 507 (La. 2000). In *Timmons*, the Louisiana Supreme Court evaluated whether an employee's deviation from a business-mandated trip removed the conduct from the course and scope of employment. The *Timmons* court emphasized that an employee acts within the course and scope of employment only when the action is "activated at least in part by a purpose to serve the employer." *Id.* at 510. Unlike *Timmons*, where the tortfeasor was a paid employee performing a required primary business errand who then made

[27] [Doc. No. 147, p. 12].
[28] [Doc. No. 147-2, p. 21].

a small personal stop, Rogers was not a paid employee and was not conducting a business mission. Again, transporting a discarded, two-year-old display box spring to his own home for family use served no business or economic purpose for Miriam's Furniture. As established, there was no employer-employee relationship from which Rogers could have deviated. Consequently, *Timmons* does not prevent summary judgment where, as here, the nonmoving party fails to show the errand was to serve any benefit of the *employer*.

As to Plaintiffs' reliance on *Tapps v. McClendon*, that case determined that although the parties maintained their relationship was purely a friendship, the evidence submitted showed that the tortfeasor had worked on the friend's properties, "doing whatever was needed, including yard work, cleaning, repairs, and possibly rent collection." No. 22-13, 2023 WL 3765236, at *6 (E.D. La. June 1, 2023). And the tortfeasor "did plumbing and electrical work, among other things" on the property where the plaintiff resided. *Id.* The owner/friend of the tortfeasor even acknowledged that the tortfeasor's work benefited him, and the tortfeasor stated that he "received ten percent of the profits of the properties he worked on, as well as hotel discounts and cash gifts." *Id.*

Plaintiff argues that "the record here is at least as strong as that in *Tapps*."[29] The Court disagrees. Unlike *Tapps*, where the alleged tortfeasor performed continuous, ongoing tasks directly benefiting the commercial property management enterprise in exchange for direct financial remuneration, profit shares, and

[29] [Doc. No. 147].

significant perks, the record here reflects no such business benefit or payment arrangement. Rogers was neither an employee on payroll nor a compensated agent of Miriam's Furniture. More critically, transporting a discarded display item to his own residence for personal family use provided zero economic or operational benefit to Miriam's Furniture. Because Plaintiffs present no competent summary judgment evidence establishing an employment relationship or an errand undertaken for the benefit or under the direction of the alleged employer, *Tapps* is inapposite and does not preclude summary judgment.

### C. Contractual liability between Movants and Rogers

Plaintiffs assert an alternative claim that Movants entered into a contract or agreement with Rogers for the use of his personal GMC and assumed liability for his actions.[30] Movants contend, however, that Plaintiffs produce no evidence that Movants had entered into a contract with Rogers or any evidence found in the produced State Farm policies that would create a contractual agreement.[31] Plaintiffs, in opposition, argue that "Article 2320 imposes liability on employers for the 'damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed,' not for the damage occasioned by their servants only when a written vehicle-use contract exists."[32] Movants, however, never argued that such a contract had to be in writing.[33]

30 [Doc. No. 30, p. 8].
31 [Doc. No. 140-1, p. 26].
32 [Doc. No. 147, p. 16].
33 [Doc. No. 156, p. 8].

The Court has no problem reviewing the evidence, and it is more than clear that no such evidence of a contract, whether written or otherwise, existed between the Movants and Rogers. Additionally, Movants stated under oath that no such agreement ever existed.[34] Plaintiffs have failed to offer or prove that such an agreement existed; therefore, they fail on this argument.

As to the insurance stacking argument, since the Court has found there is no vicarious liability, there is no reason to discuss the coverage issue; however, based on the evidence presented, there is no coverage from Movants' auto policies covering Rogers personal GMC. Instead, Rogers' personal GMC pickup truck was insured under a separate, personal State Farm Policy, and he was not a named insured under Miriam's Furniture's commercial policies.[35]

## III. Conclusion

For the reasons stated above,

**IT IS ORDERED**, **ADJUDGED**, **AND DECREED** that Miriam G. Rogers, individually, and Miriam Rogers D/B/A Miriam's Furniture's Motion for Summary Judgment [Doc. No. 140] is **GRANTED.**

**IT IS FURTHER ORDERED**, **ADJUDGED**, **AND DECREED** that all claims asserted against Defendants Miriam G. Rogers, individually, and Miriam Rogers D/B/A Miriam's Furniture in this action are **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 21st day of August 2026.

---

[34] [Doc. No. 84-8, p. 4].

[35] [Doc. No. 94-8].

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE